UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

MARSEILLE-KLINIKEN AG,
Chamerstrasse 67, 6300 Zug, Switzerland;

        Petitioner;                Case No. _____

      v.

REPUBLIC OF EQUATORIAL GUINEA,
Presidential Palace, Rue du 12 Octobre,
Malabo, Equatorial Guinea;

        Respondent.
_____/

## PETITION TO CONFIRM
## INTERNATIONAL ARBITRATION AWARD

Pursuant to Chapter 2 of the Federal Arbitration Act (the "FAA") and the 1958 Convention on the Recognition and Enforcement of Foreign Arbitral Awards, June 10, 1958, 21 U.S.T. 2517 ("the New York Convention"), Petitioner Marseille-Kliniken AG ("Marseille-Kliniken") petitions the Court for an order and judgment confirming the final and binding arbitral award issued by the arbitral tribunal in the international arbitration issued on December 18, 2017 (the "Final Award"), in the case styled *Marseille-Kliniken AG v. The Government of the Republic of Equatorial Guinea* (Arbitration No. 600413-2015) before the Swiss Chambers' Arbitration Institute (the "SCAI") (the "Arbitration").

A certified true and correct copy of the Final Award is attached as Exhibit A-2 to the accompanying Declaration of Ulrich Marseille, dated December 7, 2020, a true and correct copy of which is attached hereto as Exhibit A (the "Marseille Declaration").

In further support of this Petition, Marseille-Kliniken states the following:

## INTRODUCTION

1.    The three-member tribunal in the Arbitration (the "Tribunal") issued the Final Award in favor of Marseille-Kliniken, which is final and enforceable under the New York Convention.

2.    The United States is a party to the New York Convention and implemented it pursuant to chapter 2 of Title 9 of the U.S. Code. See 9 U.S.C. §§ 201, et seq.

3.    Consistent with the express mandate under the New York Convention, this Court must enforce the Final Award "unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the said Convention." 9 U.S.C. § 207.

4.    The grounds enumerated in the New York Convention for refusal to recognize or enforce an international arbitration award are extremely limited and no such grounds exist in this case.

5.    Accordingly, Marseille-Kliniken is entitled to entry of a judgment as outlined below.

## PARTIES, JURISDICTION AND VENUE

### The Parties

6.    Marseille-Kliniken is a corporation established under the laws of Switzerland with its principal place of business at Chamerstrasse 67, 6300 Zug, Switzerland.

7.    Equatorial Guinea is a "foreign state" within the meaning of the Foreign Sovereign Immunities Act, 28 U.S.C. § 1603. Equatorial Guinea's address for purposes of this proceeding is Presidential Palace, Rue du 12 Octobre, Malabo, Equatorial Guinea.

**Personal Jurisdiction**

8.      This Court has personal jurisdiction over Equatorial Guinea pursuant to 28 U.S.C.

§ 1330(b), which authorizes the court to exercise personal jurisdiction over a foreign state in an

action with respect to which the foreign state is not entitled to sovereign immunity under 28

U.S.C. §§ 1605-1607.

9.      Under 28 U.S.C. § 1605, Equatorial Guinea is not entitled to sovereign immunity

because this case falls under the exception for cases brought to confirm arbitration awards that

"are or may be governed by a treaty or other international agreement in force in the United States

calling for the recognition and enforcement of arbitral awards." 28 U.S.C. §1605(a)(6).

10.     The Final Award is governed by the New York Convention because this is an

action to enforce an international arbitration award rendered in Switzerland, which is a party to

the New York Convention. "The New York Convention is exactly the sort of treaty Congress

intended to include in the arbitration exception [28 U.S.C. §1605(a)(6)]." Belize Bank Ltd. v.

Gov't of Belize, 191 F. Supp. 3d 26, 33 (D.D.C. 2016) (internal citations omitted).

**Subject Matter Jurisdiction**

11.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1330(a) as this

is an action for relief *in personam* against a foreign state as defined in 28 U.S.C. § 1603(a) with

respect to which the foreign state is not entitled to immunity either under 28 U.S.C. §§ 1605–

1607 or under any applicable international agreement.

12.     Additionally, this Court has subject matter jurisdiction under Chapter 2 of the

FAA. 9 U.S.C. § 203 provides that "[a]n action or proceeding falling under the [New York]

Convention shall be deemed to arise under the laws and treaties of the United States. The district

courts of the United States...shall have original jurisdiction over such an action or proceeding, regardless of the amount in controversy."

**Venue**

13.    Venue is proper in this District Court pursuant to 9 U.S.C. § 204 and 28 U.S.C. § 1391(f)(4), which provides that "[a] civil action against a foreign state . . . may be brought … in the United States District Court for the District of Columbia if the action is brought against a foreign state or political subdivision thereof."

**THE ARBITRAL AGREEMENT, ARBITRATION, AND THE FINAL AWARD**

15.    The Parties' dispute arose from Equatorial Guinea's breach of the Management Contract for the Polyclinic La Paz (Bata) (the "Polyclinic") dated December 14, 2009 (the "Management Contract"). A true and correct copy of the Management Contract is attached as Exhibit "A-1" to the Marseille Declaration.

16.    The Polyclinic, currently known as the La Paz Medical Center, is located in Bata, Equatorial Guinea. It first opened in 2007 and is the principal referral hospital in Equatorial Guinea.

17.    Article 14 of the Management Contract included the following dispute resolution provision which provided for mandatory arbitration in the event of a dispute arising from the contract (the "Arbitration Clause"):

> *In the event of disputes arising from this contract, the Parties shall attempt to find an amicable solution prior to calling upon the courts of Equatorial Guinea. In the event of a dispute the Parties agree to seek Arbitration Proceedings before the Chamber of Commerce in Zürich.*

18.    The Tribunal, noting that the Parties conceded that the Arbitration Clause was enforceable and binding, found that the Arbitration Clause in the Management Contract was

enforceable under Swiss law, which was the substantive law applicable to the Arbitration, and that the Tribunal had jurisdiction. See Final Award at ¶ 139.

19.    Pursuant to the Management Contract, Marseille-Kliniken was to become the operator of the Polyclinic, including responsibility for personnel decisions, training and continuing education for personnel, and development and supply of software for hospital administration.

20.    The Management Contract contemplated a take-over process which entailed two phases: (i) Phase A, which involved taking financial control of the Polyclinic, commencing installation of new software systems, management and selection of drugs and supplies, and implementation of new personnel standards; and (ii) Phase B, which involved taking full control of technology, personnel, as well as physical management of the Polyclinic.

21.    Compensation for Phase A under the Management Contract was to be an all-inclusive fixed fee of EUR 840,000, not including housing costs, water, electricity, and local transportation for employees.

22.    Compensation for Phase B was to be a fixed Management Fee of EUR 700,000 per month (the "Management Fee").

23.    After Marseille-Kliniken completed all of its obligations under Phase A of the Management Contract at the beginning of August 2010, as the Tribunal found in the Final Award, Equatorial Guinea began to block Marseille-Kliniken's access to the newly installed software and IT system at the Polyclinic in December 2010. See Final Award at ¶ 193 (stating that "[i]t can therefore be assumed that Phase A was completed at the beginning of August 2010 and that Phase B had started"). At approximately the same time, the Health Minister of Equatorial Guinea, Marcelino Oyono Ntutumo, who also served as President (Chair) of

Polyclinic´s Board of Administration, hired Frank Mensching, a former IT employee of Marseille-Kliniken, who was still an employee of Marseille-Kliniken when he was hired and had been involved in the installation of the new IT system at the Polyclinic. See Marseille Declaration ¶ 12.

24.    Marseille-Kliniken attempted to continue performing under the Management Contract and expressed serious concerns about its lack of access to the IT system, but was never able to regain access to the new state-of-art system. See Marseille Declaration at ¶ 13. In conversations during this period, including in January 2011, Health Minister Marcelino Oyono Ntutum indicated to Marseille-Kliniken's local director at the Polyclinic, Fritz Kronenbergert, that Equatorial Guinea "wanted to get out of the contract." See Final Award at ¶¶ 179-184.

25.    Just three months later, on March 14, 2011, Marseille-Kliniken's local director and the technological director of the Polyclinic – Fritz Kronenberger and Kurt Gerard, respectively – were ousted from the Polyclinic and instructed to leave the country within 48 hours by government officials of Equatorial Guinea – Dr. Donato Ndong Oburu and Dr. Pedro Ndong Asumu – acting on behalf of the Board of Administration of the Polyclinic and its President (Chair) Dr. Salomon Nguema Owono (who at the time also served as the new Minister of Health replacing Marcelino Oyono Ntutumo). See Final Award at ¶ 66. See also Marseille Declaration at ¶ 15.

26.    Immediately following the expulsions of their key staff from Equatorial Guinea in March 2011, Marseille-Kliniken withdrew from the Polyclinic and Equatorial Guinea altogether later in same month.

### The First Arbitration

27.     Following Equatorial Guinea's breach of the Management Contract and the expulsion of Marseille-Kliniken's employees from the Polyclinic, Marseille-Kliniken initiated an arbitration against Equatorial Guinea on June 20, 2011, in which is asserted a partial claim for 90% of the damages it incurred, including payment of that portion of Management Fees, for the period from August 2010 through March 2011 and the complete Management Fee of EUR 700,000 per month for the period from April 2011 through August 2012 (the "First Arbitration").

28.     Such partial claims are permissible under Swiss law and the claimant may reserve the right to seek the balance of their damages.

29.     The tribunal in the First Arbitration issued an award on December 5, 2014, in which it awarded Marseille-Kliniken a total amount of EUR 14,036,400, plus interest and costs.

30.     On May 28, 2015, the Parties entered into a Dispute Settlement Agreement (the "Dispute Settlement Agreement"), pursuant to which they fixed a specific amount to be paid in connection with the settlement of the award issued in the First Arbitration.

### The Arbitration

31.     Prior to entering into the Dispute Settlement Agreement, Marseille-Kliniken initiated the Arbitration, which was the second arbitration proceeding between the parties arising from Equatorial Guinea's breach of the Management Contract.

32.     In the Arbitration, Marseille-Kliniken sought the remaining 10% portion of the Management Fees for the period from August 2010 until August 2012, which it did not initially claim in the First Arbitration, and the full unpaid Management Fees for the period from September 2012 through January 2020, which represented the full term of the Management Contract, including a 5-year additional term.

*The Final Award*

33.    After the receiving the Parties written arguments and conducting a one-day final hearing on December 5, 2016, during which witnesses of both parties were presented, the Tribunal issued the Final Award on December 19, 2017.[1]

34.    The Final Award granted Marseille-Kliniken the 10% of the Management Fees for the period from August 2010 through August 2012 and the full Management Fees for the period from September 2012 through January 2015. From these amounts, the Tribunal deducted the expenditures it calculated Marseille-Kliniken had saved to determine the amount of damages, which it set at EUR 7,380,611, plus interest at the default rate of 5% established under Swiss law. See Final Award at pp. 86-87. The Tribunal also fixed the dates upon which the interest calculations should be based:

| Time Period for Management Fees | Awarded Amount | Date to Begin Interest Calculation |
|---|---|---|
| August 10, 2010 – July 31, 2011 | EUR 637,134 | February 18, 2011 |
| August 1, 2011 – July 31, 2012 | EUR 267,068 | May 1, 2011 |
| August 1, 2012 – July 31, 2013 | EUR 2,470,383 | May 1, 2012 |
| August 1, 2013 – July 31, 2014 | EUR 2,670,684 | May 1, 2013 |
| August 1, 2014 – January 31, 2015 | EUR 1,335,342 | May 1, 2014 |

35.    In addition, the Tribunal awarded costs to Marseille-Kliniken in the separate amounts of CHF 92,470.35 and EUR 27,568.58.

---

[1]    The Final Award was sent to the parties by email on December 19, 2017, followed by a hard copy on December 20, 2017. One of the arbitrators, Melissa Magliana, executed the Final Award on December 14, 2017. The other two arbitrators – Drs. Felix Fischer and Andrea Meier – executed the Final Award on December 18, 2017. A true and correct copy of the email communication dated December 19, 2017, is attached as Exhibit A-3 to the Marseille Declaration.

36.    At current exchange rates, calculated as of the filing of this Petition, the damages awarded to Marseille-Kliniken, not including interest, amount to an approximate total of USD 9,315,309.[2]

## ANALYSIS

37.    The Final Award is the result of an international commercial arbitration between Marseille-Kliniken and Equatorial Guinea falling under the New York Convention because the Final Award was rendered in Switzerland, which is signatory to the New York Convention. Belize Bank Ltd., 191 F. Supp. 3d at 33.

38.    The United States implemented the New York Convention pursuant to Chapter 2, Title 9 of the U.S. Code. See 9 U.S.C. § 201, et seq. Section 207 of that Chapter provides:

> Within three years after an arbitral award falling under the Convention is made, any party to the arbitration may apply to any court having jurisdiction under this chapter for an order confirming the award as against any other party to the arbitration. *The court shall confirm the award unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the said Convention.*

9 U.S.C. § 207 (emphasis added); see also Scherk v. Alberto-Culver Co., 417 U.S. 506, 520 n. 15 (1974) ("The goal of the [New York] convention, and the principal purpose underlying American adoption and implementation of it, was to encourage the recognition and enforcement of commercial arbitration agreements and international contracts and to unify the standard by which the agreements to arbitrate are observed and arbitral awards are enforced in the signatory countries.").

39.    Consistent with the strong federal policy favoring arbitration, confirmation proceedings under the New York Convention are generally summary in nature. Belize Bank Ltd., 191 F. Supp. 3d at 35.

---

[2]    Calculated as of November 17, 2020 using the Currency Converter available at www.OANDA.com.

40.    The New York Convention provides that covered awards must be enforced, absent very specific and limited grounds. Section 207 provides that confirmation is mandatory "unless [the Court] finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the said Convention." 9 U.S.C. § 207. Accordingly, U.S. courts have little discretion to refuse to confirm an award under the FAA.

41.    The burden of proof is on the party defending against enforcement of the arbitral award under the New York Convention. Belize Bank Ltd., 191 F. Supp. 3d at 35 ("'[T]he burden of establishing the requisite factual predicate to deny confirmation of an arbitral award rests with the party resisting confirmation,' and the 'showing required to avoid summary confirmation is high.'") (internal citations omitted).

42.    Pursuant to 9 U.S.C. § 207, Marseille-Kliniken is therefore entitled to prompt confirmation, recognition and enforcement of the Final Award under the New York Convention and respectfully requests that the Court enter judgment against Equatorial Guinea in the amount of the Final Award with compound interest as required by the Final Award.

## CONCLUSION

WHEREFORE, Petitioner Marseille-Kliniken respectfully requests:

a.    an order of this Court pursuant to 9 U.S.C. § 207 confirming the Final Award and entering judgment thereon;

b.    a judgment in favor of Petitioner and against Equatorial Guinea that conforms to the Final Award, including pre-judgment interest at 5% annually to be calculated as provided in the Final Award, and costs;

c.    an award of post-judgment compound interest under 28 U.S.C. § 1961;

d.    an award of costs incurred by Petitioner in bringing this proceeding, including reasonable attorneys' fees;

e.    an order of this Court retaining jurisdiction over the matter for any further proceedings as may be necessary to enforce the Final Award and any further awards or judgments which may be obtained by Petitioner against Equatorial Guinea; and

f.    any other relief that this Court, in the interests of justice, deems necessary and proper.

December 8, 2020                                Respectfully submitted,

                                               **DLA PIPER LLP (US)**

                                               */s/ Mary E. Gately*
                                               Mary E. Gately
                                               (DC Bar No. 419151)
                                               Paul D. Schmitt
                                               (DC Bar No. 1007680)
                                               500 Eighth Street, NW
                                               Washington, DC 20004
                                               Tel.: +1.202.799.4000
                                               Fax: +1.202.799.5000
                                               Mary.Gately@dlapiper.com
                                               Paul.Schmitt@dlapiper.com

                                               Harout J. Samra
                                               (Florida Bar No. 70523)
                                               200 South Biscayne Boulevard, Suite 2500
                                               Miami, Florida 33131
                                               Tel.: +1.305.423.8500
                                               Fax: +1. 305.437.8131
                                               Harout.Samra@dlapiper.com
                                               (*Application for Admission Pro Hac Vice Pending*)

                                               *Counsel for Marseille-Kliniken AG*