UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

MARSEILLE-KLINIKEN AG,             )
                                   )
        Petitioner,                )
                                   )
    v.                             )   Civil Case No. 20-3572 (RJL)
                                   )
REPUBLIC OF                        )
EQUATORIAL GUINEA,                 )
                                   )
        Respondent.                )

## MEMORANDUM OPINION
(November 17, 2023) [Dkt. #1]

Petitioner Marseille-Kliniken AG won an arbitration award against the Republic of Equatorial Guinea and then petitioned this Court to confirm the award. In opposition, Equatorial Guinea says that the parties agreed to litigate in an Equatoguinean court before using arbitration as an appeal tribunal. That argument has a few problems, chief among which is that such procedural preconditions to arbitration are for arbitrators to decide. For that reason and others, the arbitration award will be CONFIRMED.

### BACKGROUND

In 2007, the Republic of Equatorial Guinea opened a hospital called Polyclinic La Paz (the "Polyclinic") in the city of Bata. Pet. to Confirm Arb. Award ("Pet.") [Dkt. #1] ¶¶ 15–16. In December 2009, Equatorial Guinea hired Marseille-Kliniken, a Swiss corporation, to operate the Polyclinic. *Id.* ¶¶ 6, 15, 19. The parties memorialized their agreement in a Management Agreement, whose provisions are in both Spanish and German, appearing side-by-side. *Id.* ¶ 15; *see* Pet. Ex. A-1.

According to the German-to-English translation furnished by Marseille-Kliniken, the Management Agreement contemplated a two-phase process for Marseille-Kliniken to take over the Polyclinic's operations from the previous operator. Pet. Ex. A-1 § 6. In Phase A, Marseille-Kliniken would assume control of the Polyclinic's finances, install new software systems, start selecting medications and supplies to procure, and implement new personnel standards. *Id.* § 6.1. Starting in Phase B, Marseille-Kliniken would assume full control of the Polyclinic's physical space, personnel, and technology. *Id.* § 6.2. As compensation, Marseille-Kliniken would receive €840,000 for completing Phase A and €700,000 per month for Phase B. *Id.* § 6.

A year after the parties entered into the Management Agreement, their relationship went south. Although the parties differ in explaining the causes of what transpired,[1] they agree that in December 2010, Equatorial Guinea blocked Marseille-Kliniken's access to the Polyclinic's information technology system. Pet. ¶ 23; Opp'n to Pet. to Confirm Arb. Award ("Opp'n") [Dkt. #16] at 6. In March 2011, Equatorial Guinea terminated the contract, and Marseille-Kliniken withdrew from the Polyclinic and the country. Pet. ¶¶ 25–26; Opp'n at 6.

After an initial arbitration for partial damages was decided in Marseille-Kliniken's favor, the company initiated a second arbitration before the Swiss Chambers' Arbitration

---

[1] From Marseille-Kliniken's perspective, it received word in January 2011 that Equatorial Guinea simply "wanted to get out of the contract." Pet. ¶ 24. Equatorial Guinea, on the other hand, claims that Marseille-Kliniken turned out to be unqualified for the work, its staff did not speak Spanish (the local language), and its software system had sustained errors. Opp'n at 6. The country also cites allegations that Marseille-Kliniken engaged in fraud and sabotage, plus a criminal prosecution of the company's founder in Germany. *Id.*

Institution for the remaining claimed damages. Pet. ¶¶ 27–32; *see* Pet. Ex. A-2 ("Arb. Award"). The arbitration was brought pursuant to the Management Agreement's dispute clause, the meaning of which is heavily disputed in this action. From German, the dispute clause translates to the following:

> Should a dispute arise from this agreement the Parties shall attempt to find an amicable solution prior to calling upon the Courts of Equatorial Guinea. If disputes do occur, the Parties shall commit to Arbitration Proceedings before the Chamber of Commerce in Zürich.

Pet. Ex. A-1 § 14; *see also* Opp'n Ex. C. From Spanish, however, it translates differently:

> In the event of disputes the Parties will meet and solve the problem amicably, otherwise they will turn to the Courts of Equatorial Guinea. In case of disagreement by one of the parties, the Court of the Chamber of Commerce in Zurich may be called upon.

Opp'n Ex. C. The three arbitrators interpreted the clause to mean that either party could initiate arbitration instead of going to an Equatoguinean court. Arb. Award ¶¶ 131–149. The panel rejected Equatorial Guinea's proposed interpretation that the parties first had to resolve disputes in an Equatoguinean court and then could effectively appeal to arbitration. *Id.* ¶¶ 133, 143. Under the interpretation it adopted, it held that it had jurisdiction to hear Marseille-Kliniken's claim. *Id.* ¶ 149. On the merits, it awarded the company €7,380,611 plus costs and interest. *Id.* at 86–87.

Happy with the outcome in arbitration, Marseille-Kliniken initiated this action with a petition to confirm the award. Pet. ¶¶ 1–5. Equatorial Guinea filed an opposition brief, Opp'n at 1–2, and Marseille-Kliniken filed a reply, Reply in Supp. of Pet. to Confirm Arb. Award [Dkt. #18]. The petition is now ripe for decision.

## DISCUSSION

**I.  Subject Matter Jurisdiction**

The Court has subject matter jurisdiction under 28 U.S.C. § 1330(a). That provision "confers jurisdiction on district courts to hear suits brought by United States citizens and by aliens when a foreign state is not entitled to immunity." *Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428, 434 (1989) (emphasis omitted). Under the Foreign Sovereign Immunities Act, a foreign state is immune from the jurisdiction of courts in the United States unless a statutory exception applies. 28 U.S.C. § 1604; *Wye Oak Tech., Inc. v. Republic of Iraq*, 24 F.4th 686, 690 (D.C. Cir. 2022). At issue here is the arbitration exception, Pet. ¶¶ 8–12; Opp'n at 23–25, under which a foreign state is not immune from jurisdiction in an action "to confirm an award made pursuant to . . . an agreement to arbitrate, if . . . the agreement or award is or may be governed by a treaty or other international agreement in force for the United States calling for the recognition and enforcement of arbitral awards." 28 U.S.C. § 1605(a)(6). For the exception to apply, three jurisdictional facts must be established: "the existence of an arbitration agreement, an arbitration award[,] and a treaty governing the award." *LLC SPC Stileks v. Republic of Moldova*, 985 F.3d 871, 877 (D.C. Cir. 2021). The plaintiff bears the burden of producing evidence supporting each fact, then the foreign sovereign bears the burden of persuasion that the parties did not in fact agree to arbitrate. *Chevron Corp. v. Republic of Ecuador*, 795 F.3d 200, 204–05 (D.C. Cir. 2015).

Marseille-Kliniken has met its burden of production. It has produced the Management Agreement containing the dispute clause calling for arbitration, and the

4

arbitration award from the Swiss Chambers' Arbitration Institution. *See* Pet. Ex. A-1; Arb. Award. And the New York Convention, discussed below, no doubt governs the award. *See LLC SPC Stileks*, 985 F.3d at 877 n.3.

In response, Equatorial Guinea argues—as it does on the merits, discussed below— that it "did not agree to submit every and any contract dispute arising under the Management Agreement" and that arbitration was to occur, if at all, after litigating in an Equatoguinean court. Opp'n at 24. But those arguments pertain to "the arbitrability of a dispute[, which] is not a jurisdictional question under the FSIA." *LLC SPC Stileks*, 985 F.3d at 878. Like many sovereigns before it, Equatorial Guinea incorrectly "conflates the jurisdictional standard of the FSIA with the standard for review under the New York Convention." *Id.* (quoting *Chevron*, 795 F.3d at 205). It is therefore not entitled to immunity here.

## II.   Confirmation of the Arbitration Award

On the merits, the arbitration award in Marseille-Kliniken's favor must be confirmed. It is a foreign arbitration award, so its confirmation is governed by the New York Convention. Convention on the Recognition and Enforcement of Foreign Arbitral Awards art. I(1), June 10, 1958, 21 U.S.T. 2517 [hereinafter New York Convention]; *see* 9 U.S.C. § 201 (incorporating and codifying the New York Convention). A court shall confirm such an award "unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the said Convention." 9 U.S.C. § 207. Those grounds "are tightly construed, and the burden is placed on the party opposing

enforcement." *Diag Hum. S.E. v. Czech Republic - Ministry of Health*, 907 F.3d 606, 609 (D.C. Cir. 2018).

Citing article V(1)(c) of the Convention, Equatorial Guinea believes that the award in Marseille-Kliniken's favor "deals with a difference not contemplated by or not falling within the terms of the submission to arbitration, or it contains decisions on matters beyond the scope of the submission to arbitration." New York Convention art. V(1)(c); Opp'n at 11–12. Relying primarily on the Spanish-to-English translation quoted above, it argues that the Management Agreement's dispute clause contemplates arbitration only after litigating in an Equatoguinean court, with arbitration to act as an appeal. Opp'n at 12–19.

Assuming that Equatorial Guinea's argument even raises an issue over the "terms" or "scope" of the parties' submission to arbitration, New York Convention art. V(1)(c),[2] the arbitrators' rejection of Equatorial Guinea's interpretation of the dispute clause is entitled to considerable deference. As observed by the Supreme Court in *BG Group, PLC v. Republic of Argentina*, "courts presume that the parties intend arbitrators, not courts, to decide disputes about the meaning and application of particular procedural preconditions for the use of arbitration." 572 U.S. 25, 34 (2014). At issue in *BG Group* was a treaty provision allowing arbitration only after a party commenced litigation in a local court and

---

[2] And the Court doubts even that much. Article V(1)(c) allows a party opposing confirmation to assert that an agreement to arbitrate does not cover the substantive type of dispute that was arbitrated. *E.g.*, *LLC SPC Stileks*, 985 F.3d at 878 (observing that an argument that a party "agreed to arbitrate certain disputes" but not "this *particular* dispute" is one that should have properly been raised pursuant to article V(1)(c)). Such an argument here would be that the Swiss arbitration panel decided an issue not "aris[ing] from" the Management Agreement. Pet. Ex. A-1 § 14. But Equatorial Guinea's argument is more procedural: that the parties should have first litigated in an Equatoguinean court before arbitrating. "[T]ightly construed," *Diag Hum.*, 907 F.3d at 609, article V(1)(c) does not seem to allow that argument.

one of two scenarios resulted: either eighteen months elapsed without a final decision or a final decision had been issued but a dispute remained between the parties. *Id.* at 28–29. That local-litigation requirement, the Court reasoned, "operates as a procedural condition precedent to arbitration" because it "determines *when* the contractual duty to arbitrate arises, not *whether* there is a contractual duty to arbitrate at all." *Id.* at 35. Accordingly, the arbitrators' interpretation and application of the local-litigation requirement was to be reviewed "with considerable deference." *Id.* at 41. Similar deference is owed to the arbitrators' interpretation of the dispute clause here, which Equatorial Guinea invokes to quibble over "*when*" to arbitrate—that is, before or after Equatoguinean litigation—not "*whether*" to arbitrate. *Id.* at 35; *see* Opp'n at 13 (arguing "that recourse to the domestic courts *must* take place in the event of a dispute and, moreover, that such recourse must occur *prior* to any arbitration"). The arbitrators decided that they had jurisdiction over Marseille-Kliniken's claim, and the Court has not been given any reason to disturb that decision.

## CONCLUSION

For the foregoing reasons, Marseille-Kliniken's petition will be GRANTED and the arbitration award in its favor will be CONFIRMED. An order consistent with this decision accompanies this Memorandum Opinion.

*[signature]*
RICHARD J. LEON
United States District Judge